UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER SANCHEZ, SR.,

Petitioner,

v.

Case No. 24-cv-11273
HON. MARK A. GOLDSMITH

JAMIE CORRIGAN,[1]

Respondent.
_______________________________________/

**OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Christopher Sanchez, Sr., a Michigan prisoner, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Sanchez challenges his Ottawa Circuit Court jury trial conviction of one count of third-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520d(1)(a), and one count of fourth-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520e(1)(a). The court sentenced Sanchez as a fourth-time habitual felony offender to 35–75 years in prison for the third-degree offense and a lesser term for his other offense. Because none of the claims raised in the petition has merit, the petition will be denied.

## I. BACKGROUND

The Michigan Court of Appeals summarized the facts of Sanchez's case:

> Defendant's convictions arise from his sexual assault of AV, who was 15 years old at the time of the assault. AV was living with her family at a motel while more permanent housing was being readied for the family. Defendant worked night security at the motel. AV first encountered defendant when he inserted himself into a conversation that she and her mother were having about AV's workouts at the YMCA. Defendant claimed that he had been a mixed martial arts (MMA) fighter in the armed services. Later in the day, defendant went to AV's motel room and offered to show her some of his martial arts moves and videos of people whom he

[1] The Court substitutes the Warden of the Chippewa Correctional Facility, Jamie Corrigan, where Sanchez is currently incarcerated, as Respondent. See Habeas Rule 2(a), 28 U.S.C. § 2254.

> had trained. That evening, AV and defendant practiced MMA kicks behind the motel. At some point, defendant asked AV to kiss him on the cheek, and he told her that she could be a model considering her appearance and the manner in which she presented herself. The next day, defendant invited AV to join him and other trainees for a run on some park trails. Believing that AV would be in a public place with other people, AV's mother gave her permission to go with defendant.
>
> Instead of taking AV to the park, defendant drove her to his house 45 minutes away from the motel. At his home, and while training AV in MMA moves, defendant sexually assaulted her by digitally penetrating her vagina and fondling and licking her right breast. Afterward, defendant drove AV back to the motel. She immediately informed her mother about the sexual assault. AV's mother then called the police. AV was taken to a clinic where a sexual assault nurse examiner (SANE) performed a sexual-assault examination. A swab was taken from the nipple of AV's right breast during the examination, and later analysis of DNA obtained from the swab revealed that it matched defendant's DNA. Defendant was charged, arrested, and convicted by a jury of CSC-III and CSC-IV after a three-day trial. He was sentenced as indicated earlier.
>
> Defendant moved for a new trial or a Ginther hearing. And after a four-day Ginther hearing, the trial court concluded that although defense counsel's performance on certain evidentiary issues was deficient, there was no reasonable probability that but for counsel's errors the results of the proceeding would have been different. Accordingly, the trial court denied defendant's motion for new trial.

People v. Sanchez, No. 354925, 2023 WL 3559661, at *1-2 (Mich. Ct. App. May 18, 2023).

Sanchez raised eight claims on direct appeal in the Michigan Court of Appeals – four of which he now raises in his federal habeas petition:

> I. Mr. Sanchez suffers from severe and profound hearing loss and could not hear or understand the witnesses at his trial or participate in his defense and received ineffective assistance of counsel when his attorney failed to request or obtain hearing aids and abandoned Mr. Sanchez during the testimony of two crucial witnesses.
>
> II. Mr. Sanchez's attorney was ineffective for failing to object to and moving to suppress custodial interrogation statements since Mr. Sanchez did not make a knowing, intelligent, and voluntary waiver of his Miranda rights. Furthermore, Mr. Sanchez's attorney was ineffective for allowing the prosecution to mischaracterize Mr. Sanchez's custodial interrogation statement to the jury without rebuttal.
>
> III. Mr. Sanchez's attorney was ineffective for failing to review or obtain the custodial interrogation recording or home surveillance video which would have substantially bolstered Mr. Sanchez's defense.

V. The trial court erred in allowing testimony from a Mich. R. Evid. 404(b) witness that could not identify Mr. Sanchez in court.

(ECF No. 9-18, PageID.2450.)

The Michigan Court of Appeals rejected the claims on the merits in an unpublished opinion. Sanchez, 2023 WL 3559661. Sanchez appealed to the Michigan Supreme Court, raising these four claims. (ECF No. 9-19, PageID.2756.) The Michigan Supreme Court denied the application for leave to appeal. People v. Sanchez, 1 N.W.3d 250 (Mich. 2024) (Table).

Sanchez then filed his federal habeas petition. (ECF No. 1.) Respondent filed a responsive pleading, and the matter is now ready for decision. (ECF No. 8.)

## II. LEGAL STANDARD

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15–16 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.... As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103 (internal quotation omitted).

## III. ANALYSIS

### A

Sanchez's first three habeas claims assert that he was denied the effective assistance of trial counsel. The trial court denied relief on the merits after holding an evidentiary hearing. Sanchez pressed the claims in the Michigan Court of Appeals, but it affirmed the decision of the trial court.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established the familiar two-part test for determining whether a habeas petitioner received ineffective assistance of counsel. First, a petitioner must show that counsel's performance was deficient. Id. at 687. This requires showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. Second, a petitioner must establish that counsel's deficient performance prejudiced the defense. Id. This requires showing that counsel's errors were so serious that they deprived the petitioner of a fair trial or appeal. Id.

As to the first element, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" to prove deficient performance. Id. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. Id. at 689. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. Id. at 689.

As to the second element, a petitioner proves prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. Id. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." Id. at 686.

"The standards created by Strickland and 2254(d) are both highly deferential, . . . and when the two apply in tandem, review is doubly so." Harrington, 562 U.S. at 105 (punctuation modified). "When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

1

Sanchez first asserts that he has severe hearing loss, and he did not have access to his prescribed hearing aids at the time of trial. He claims that he complained to his trial counsel about the problem, but his attorney refused to raise the issue, and he was unable to hear the witnesses' testimony or assist in his defense during trial.

Following the post-conviction hearing, the trial court accepted the evidence presented that Sanchez suffers from some hearing loss, but it also accepted defense counsel's testimony as true that Sanchez never complained to counsel that he could not hear, and that Sanchez did, in fact, actively participate in his defense. (ECF No. 9-17, PageID.1856–1861.)

The Michigan Court of Appeals affirmed the decision of the trial court as follows:

> Defendant argues that he suffers from severe and profound hearing loss and could not hear or understand the witnesses during trial or participate in his defense. Defendant contends that defense counsel provided ineffective assistance by failing to request or obtain hearing aids for defendant and by abandoning defendant during the testimony of two crucial witnesses. Defendant maintains that the trial court clearly erred by finding credible defense counsel's testimony at the Ginther hearing that defendant could hear the trial proceedings and did not complain about an inability to hear during trial. Defendant asserts that defense counsel knew that he wanted his prescribed hearing aids during trial but that counsel refused to help him in obtaining the hearing aids. Defendant also claims that the trial court erred by ignoring the testimony of Dr. Jerry Punch, an expert audiologist.
>
> Defendant argues that defense counsel was not credible because his testimony at the Ginther hearing conflicted with answers that he gave in response to earlier e-mail questions from defendant's appellate counsel. Defendant provides two examples of defense counsel's purported lack of credibility. First, defendant states that defense counsel initially informed appellate counsel that he did not request hearing aids for defendant because "he did not want to lose 'credibility' before the trial court." At the Ginther hearing, defense counsel denied making that statement and admitted that he was aware of defendant's hearing-aid request but did not inform the trial court because he believed that defendant could hear and that the request was a "BS request." The trial court accepted as credible defense counsel's testimony that he did not tell appellate counsel that the hearing-aid issue was not raised so as to avoid losing credibility with the trial court. The trial court noted that defense counsel was "loquacious," that appellate counsel's interpretation of defense counsel's statements did not reflect defense counsel's intent, and that there was never a meeting of the minds between the two attorneys regarding the meaning of their conversation.
>
> Defendant's second example of defense counsel's alleged lack of credibility arises from an e-mail exchange between defense counsel and defendant's appellate counsel in which defense counsel appeared to suggest that it was better that defendant did not hear the trial proceedings so that defense counsel could pay attention to the witnesses' testimony. At the Ginther hearing, defense counsel acknowledged his response, explaining that it was something that he wrote in jest, that it was a "very, very, very, very unprofessional" and "absolutely stupid

comment," and that he never intended to suggest that he wanted defendant to be unable to participate and assist in his defense. Again, the trial court found defense counsel's explanation of the e-mail exchange to be credible and accurate. The court explained:

> In the email, a flippant disregard of defendant's rights is inferred. This apparent disregard of defendant's rights is in stark contrast to trial counsel's representation of defendant during the trial in which it was obvious to the court that trial counsel was heavily invested in the defense and proper representation of defendant. While one cannot condone trial counsel's comment, the court accepts trial counsel's explanation—that this was an unprofessional comment that did not reflect trial counsel's true feelings or reality. Apparently, trial counsel believed that he had a good and open line of communication with appellate counsel and let a desire for jovial banter interfere with his professional presentation.

We have no sound basis to interfere with the trial court's determination that defense counsel was credible. A Ginther hearing is an evidentiary hearing at which the trial court serves as the fact-finder, which role requires credibility assessments. See People v. White, 331 Mich. App. 144, 154 (2020) ("To the extent defendant's testimony conflicts with trial counsel's testimony at the Ginther hearing, we defer to the trial court's finding that trial counsel was more credible."); MCR 2.613(c). "[G]reat deference must be accorded to the trial court's assessment of the credibility of witnesses." People v. Cress, 468 Mich. 678, 691 (2003).

In the present case, the trial court's credibility assessment rested not just on defense counsel's testimony at the Ginther hearing but also on the court's observations during pretrial and trial proceedings, and defendant has not identified any "exceptional circumstances" that would justify this Court's rejection of the trial court's credibility evaluation. See People v. Unger, 278 Mich. App. 210, 232 (2008) (stating that "[a]bsent exceptional circumstances, issues of witness credibility are for the trier of fact").

Defendant next contends that the trial court erred by ignoring Dr. Punch's testimony regarding the extent of defendant's hearing loss and the absence of any credible evidence that defendant was faking the results of his hearing tests. Our review of the trial court's opinion and order following the Ginther hearing reveals that the trial court adequately and accurately summarized Dr. Punch's testimony. The question at the Ginther hearing did not truly concern the extent of defendant's hearing loss, but whether defense counsel knew that defendant's hearing loss may have prevented him from adequately participating in his defense and whether counsel rendered constitutionally ineffective assistance by purportedly failing to properly act upon that knowledge. Although Dr. Punch's testimony spoke to defendant's hearing loss, it did not speak to whether defendant informed defense

> counsel that he could not hear the witnesses and evidence against him and whether defense counsel ignored that information.
>
> Lastly, defendant asserts that defense counsel's relocation away from the defense table when AV and her mother testified deprived him of the opportunity to confer with defense counsel during testimony and of his right to confront and adequately cross-examine witnesses. At the Ginther hearing, defense counsel explained that he sat in the gallery 10 to 15 feet away from the defense table so that he could have an unobstructed view of AV and her mother while they testified. Counsel stated that he supplied defendant with a pad of paper and a pencil and told defendant that he was going to move. Defense counsel urged defendant to take notes. Counsel further testified that defendant actively participated in his defense by taking notes while the witnesses testified and giving those notes to counsel before his cross-examination of the witnesses. Defendant also consulted with defense counsel before the conclusion of each cross-examination. The trial court found that counsel's movement into the gallery during the testimony was not unreasonable and that defendant fully participated in his defense.
>
> Defendant has not challenged on appeal the trial court's determination that he participated in his defense. Nor has he challenged defense counsel's testimony at the Ginther hearing that he picked up notes from defendant before he started cross-examining a witness and that he consulted with defendant before he concluded his cross-examination of the witness. Given that defendant aided in his defense by taking notes during the witnesses' testimony, provided the notes to defense counsel to aid in cross-examination, and then consulted with counsel before the end of crossexamination, we conclude that defendant has not shown that he was deprived of the right to confront and adequately cross-examine witnesses.[2]
>
> For the foregoing reasons, we hold that defendant has not established that the trial court erred by determining that defense counsel's testimony was credible, by concluding that counsel did not render ineffective assistance for failing to request or obtain hearing aids for defendant, or by finding that counsel's move to the gallery was reasonable and did not deprive defendant of his constitutional rights.
> …
>
> [2] We cannot help but observe that defendant's ability to take notes regarding the testimony of witnesses entirely undermines his earlier argument that he could not hear the testimony.

Sanchez, 2023 WL 3559661, *2–4.

The rejection of the claim by the trial court rested on a finding of fact that Sanchez was sufficiently able to follow proceedings and participate in his defense, and that he did not inform his counsel about any problems at the time of trial. This finding undermined the factual basis for

the claim. (ECF No. 9-17, PageID.1859–1860.) The critical question before the Michigan Court of Appeals, therefore, was whether Sanchez could show that the trial court erred in making its factual findings, and it found that Sanchez could not. Because the state court adjudication ultimately rested on factual findings undermining the premise of the claim, the question on federal habeas review is quite limited:

> Under § 2254 (d)(2), a state's factual findings are entitled to a presumption of correctness, but a petitioner can rebut these findings by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Matthews v. Ishee, 486 F.3d 883, 889 (6th Cir. 2007). Under § 2254(d)(2), the habeas court will not conclude that a state court's factual findings are unreasonable "merely because we would have reached a different conclusion in the first instance." Brumfield v. Cain, 576 U.S. 305, 313-14 (2015). Instead, we defer to the state court's factual determinations if "reasonable minds reviewing the record might disagree about the finding in question.'" *Id*. at 314.

Haight v. Jordan, 59 F.4th 817, 868 (6th Cir. 2023).

Certainly, evidence was presented at the post-conviction hearing showing that Sanchez suffers from hearing loss. Sanchez presented an expert witness to support the allegation. The expert opined, "I wouldn't think you could hear very well in a courtroom…. [T]here's no way of knowing what he actually experienced. He might be better at telling me than I am telling him what he should or did hear… He could've heard speech and if he used lipreading adequately he might've heard much of what was being said, but again, I don't think as much as he would've … with a well-fitted hearing aid." (ECF No. 9-13, PageID.1447–1448.)

Sanchez, of course, testified that he could not hear or follow proceedings, and that he informed his counsel of the problem. (ECF No. 9-15, PageID.1692–1694, 1725–1729.) Sanchez's mother also testified that she complained to defense counsel. (ECF No. 9-14, PageID.1644.)

Trial counsel, on the other hand, testified that Sanchez did not complain to him at trial. (ECF No. 9-14, PageID.1538–1541.) Counsel went on to explain that the allegation was "absurd"

(Id. PageID.1555) because Sanchez took notes of the trial testimony and passing them to counsel, showing that he did, in fact, hear the witnesses and assist in his defense. (Id. PageID.1542–1547, 1550–1551.)

Defense counsel's testimony was supported by the testimony of a transportation officer who testified that he had no trouble communicating verbally with Sanchez during trial. (ECF No. 9-15, PageID.1748-49.) On one occasion on the way to court Sanchez mentioned to the officer that he needed his hearing aids, but when the officer offered to get them, Sanchez replied, "No I'm fine." (Id. PageID.1756.)

Finally, trial counsel's testimony was corroborated by the trial court's own observations during trial:

> The court's observations of the trial are consistent with the testimony of trial counsel when trial counsel stated that he communicated with his client after the witnesses testified. Obviously, the court was not-nor should it have been-privy to those conversations. Nevertheless, those observations support trial counsel's testimony that defendant was actively participating in the evaluation of witnesses' testimony. Further, the court's observations are in accord with trial counsel and Painter when they testified that defendant did not make any gestures to counsel indicating that he was unable to hear or participate.

(ECF No. 9-17, PageID.1860.)

In light of the conflicting evidence presented at the hearing, Sanchez cannot demonstrate entitlement to federal habeas relief. The trial court made factual findings "[a]fter evaluation the testimony, including the demeanor of the witnesses and how their testimony was supported or countered by other evidence...." (ECF No. 9-17, PageID.1853.) The court stated that it "accepts trial counsel's testimony and concludes that defendant did not express comments or concerns to trial counsel about his inability to hear the proceedings. The court further accepts trial counsel's testimony that defendant did, in fact, hear the evidence and the arguments in this case." (Id. PageID.1859.)

These findings are entitled to considerable deference, and nothing presented by Sanchez at the hearing "required the state court to conclude that [trial counsel] lied to the court." Fry v. Shoop, 124 F.4th 1019, 1026 (6th Cir. 2025). The defense expert admitted that he could not say with certainty the extent to which Sanchez's hearing loss affected his ability to follow testimony and assist at trial. And the trial court was of course free to discount Sanchez's and his mother's self-interested version of events. Sanchez has not shown by clear and convincing evidence that the trial court's factual determinations were incorrect. See, e.g., Fishback v. Parris, No. 18-51552018 WL 11303955, *2 (6th Cir. Oct. 16, 2018) ("Because the credibility of testimony is a factual question, it was not unreasonable for the Court of Criminal Appeals to accept the determinations of the trial court, which had heard the testimony); See, Weaver v. Eller, No. 24-6063, 2025 WL 1529366 *2 (6th Cir. April 29, 2025); Hammonds v. Artis, No. 23-1939, 2024 WL 3419089 (6th Cir. April 26, 2024).

Sanchez fails to demonstrate entitlement to relief with respect to this claim.

2

Sanchez's second allegation asserts that the interrogating officer provided him with defective Miranda warnings when he was arrested. Sanchez states that after the defective warnings were given, he made a non-sexual comment about the victim that was misinterpreted by the detective and relayed to the jury as if it were a sexual comment. Sanchez asserts that his trial counsel could have prevented the admission of the inaccurate and prejudicial testimony had he moved to suppress his statements on Miranda grounds.

The trial court agreed that the Miranda warnings were defective, and counsel performed deficiently by failing to move to suppress Sanchez's statement. It went on to find, however, that Sanchez failed to demonstrate Strickland prejudice. (ECF No. 9-17, PageID.1863–1867.) The

Michigan Court of Appeals assumed that the trial court correctly determined that counsel performance was deficient for failing to object, but it too found that Sanchez failed to demonstrate prejudice:

> Defendant next contends that the trial court erred by concluding that, despite defense counsel's deficient performance in failing to move to suppress statements made after inadequate Miranda[3] warnings, failing to object to the prosecutor's reference to defendant's silence, and failing to ask for a curative instruction, there was not a reasonable probability that the outcome of the trial would have been different. Ultimately, the jury heard testimony that defendant supposedly told a detective that AV had "great tits" and that defendant told the detective that he no longer wished to speak, and the jury heard the prosecutor briefly reference these matters. We agree with the trial court that defendant did not establish the requisite prejudice.[4]
>
> There was no dispute at trial that defendant drove AV to his house and that they were alone at that location for several hours. AV testified that defendant told her that she could be a model, that he asked her about her sexual experiences, and that defendant wanted to know her favorite sexual position. AV also testified that defendant had her kiss him on the cheek when they practiced MMA kicks behind the motel and that he had her kiss him on the lips at the house. A photograph of defendant and AV kissing was admitted into evidence and published to the jury. AV indicated that defendant licked her breast "many, many times," and the SANE testified that she swabbed AV's "right breast around the nipple." A DNA expert testified that defendant's DNA was a match to the DNA obtained from the right-breast swab. We find the evidence of defendant's guilt overwhelming. Furthermore, the reference to defendant's silence was brief and minimal, People v. Shafier, 483 Mich. 205, 217-218 (2009), and there was no indication that defendant unequivocally invoked his right to remain silent, People v. Todd, 186 Mich. App. 625, 628-629 (1990).[5] We conclude that defendant has not shown the existence of a reasonable probability that but for counsel's errors the result of the proceeding would have been different; we have confidence in the outcome. Carbin, 463 Mich at 600.
>
> . . .
>
> [3] Miranda v. Arizona, 384 U.S. 436 (1966).
>
> [4] We will assume that the trial court correctly determined that counsel's performance was deficient on these matters.
>
> [5] With respect to defense counsel's decision not to ask for a curative instruction, we find that defendant has not overcome the strong presumption that counsel's decision constituted sound trial strategy. Defense counsel testified at the Ginther hearing that he believed that the discussion during a sidebar that the trial court

> called shortly after the prosecutor's improper question put a stop to references to defendant's silence. And defense counsel did not want to draw the jury's attention to defendant's silence by asking for a curative instruction. We find this explanation and counsel's conduct to be reasonable.

Sanchez, 2023 WL 3559661, *4.

The Michigan Court of Appeal found that Sanchez failed to demonstrate prejudice because the evidence of his guilt was "overwhelming" whereas the improperly admitted testimony was "brief and minimal." A reviewing court comparing the strength of the evidence of guilt to the impact of the deficient performance, as here, to determine whether the defendant was prejudiced is an accepted basis for rejecting a Strickland claim. See, e.g., Knauss v. Rewerts, No. 20-1123, 2024 U.S. App. LEXIS 31973, *11 (6th Cir. Dec. 16, 2024) (habeas petitioner unable to show prejudice because the evidence of his guilt was overwhelming and largely unaffected by counsel's errors); Weld v. Braman, No. 24-1449, 2024 WL 4820877, *2–4 (6th Cir. Nov. 12, 2024) (no reasonable probability of a different result had habeas petitioner's confession been suppressed in light of overwhelming evidence of guilt); Howell v. United States, 2024 U.S. App. LEXIS 28145, *6-7 (6th Cir. Nov. 5, 2024) (reasonable jurists would not debate conclusion that habeas petitioner failed to establish prejudice in light of overwhelming evidence of guilt); Stiff v. Storey, No. 23-1964, 22024 WL 1841235, *4 (6th Cir. April 9, 2024) (same).

The Michigan Court of Appeals use of this rationale to reject Sanchez's claim was not objectively unreasonable. First, the state court reasonably found that the evidence of Sanchez's guilt was overwhelming. At trial, the victim and her mother testified that Sanchez, a man in his late forties who said he was a trainer, told them he would take the victim out for a run with "his whole class." (ECF No. 9-9, PageID.607, 655–656; ECF No. 9-10, PageID.780–781.) In fact, Sanchez took the victim alone to his house where he told her he would teach her martial arts moves. (ECF No. 9-9, PageID.609, 622–626.) During the car ride, Sanchez asked the victim about her

sexual experiences. (Id. PageID.655–656.) The victim described how the training session at Sanchez's house transitioned into a sexual assault, including the fact that Sanchez removed the victim's clothing, licked her breast, and inserted his finger into her vagina. (Id. PageID.619-28.) After the assault, Sanchez drove the victim back to the motel she was residing at with her family, and she immediately told her mother and grandmother what had happened. (Id. PageID.631-32; ECF No. 9-10, PageID.784-85.) Police were called, and the victim was taken for a forensic examination. (ECF No. 9-9, PageID.632-33.) A sample taken from around the victim's nipple indicated the presence of Sanchez's DNA. (ECF No. 9-10, PageID.956.) Photographs were recovered from Sanchez's cellphone that were taken at his house during the incident – one of which showed the two kissing. (ECF No. 9-9, PageID.614-19; ECF No. 9-18, PageID.2446.) And as defense counsel readily admitted during the post-conviction hearing, Sanchez had no plausible basis to show "why would she lie ….. We had absolutely no motive." (ECF No. 9-14, PageID.1535.)

Furthermore, a similar-acts witness testified about a strikingly similar incident occurring years earlier when she was underaged when a man she knew as Chris Sanchez sexually assaulted her during another supposed martial arts training session. The similar-acts witness could not identify Sanchez in the courtroom, but she did identify Sanchez from the photographs he took with the victim in the present case. (ECF No. 9-10, PageID.1015–1184.) It was not objectively unreasonable to conclude that the evidence of guilt presented at trial was overwhelming.

It was also reasonable for the state court to find that the improperly admitted evidence was minimal. The arresting officer testified that he had a short conversation with Sanchez after informing him of his Miranda rights. (ECF No. 9-14, PageID.1053.) According to the officer, Sanchez said something about training a girl with "great tits," that he didn't like the fact she was

working at a motel at her age, "and then he said he didn't want to talk to [the officer] anymore." (Id. PageID.1053–1054.) The prosecutor briefly mentioned the "great tits" comment during closing argument. (ECF No. 9-11, PageID.1306–1307.) While the improperly admitted evidence was prejudicial, it was not objectively unreasonable for the state court to find that the prejudicial impact was minimal given its brevity.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101, quoting Yarborough, 541 U.S. at 664. As there could at least be fairminded disagreement between jurists whether the weight of evidence presented against Sanchez prevented him from demonstrating that he was prejudiced by his counsel's failure to suppress his statement to police, he has failed to establish entitlement to habeas relief based on this claim.

3

Sanchez's final allegation of ineffective assistance of counsel asserts that his attorney failed to review all of the surveillance videos retrieved from his house. Had he done so, Sanchez argues, counsel would have been able to impeach certain details of the victim's testimony.

The trial court rejected the allegation after the post-conviction hearing, accepting counsel's testimony that he reviewed all of the videos but chose not to use them, and that Sanchez was not prejudiced. (ECF No. 9-17, PageID.1861–1863.) The Michigan Court of Appeals agreed that Sanchez failed to demonstrate deficient performance:

> Defendant next argues that defense counsel was ineffective for failing to properly review a surveillance video from defendant's house where the assault allegedly took place and to use it to impeach AV's testimony and buttress defendant's theory of defense.

> Defendant first contends that the video evidence could have been used to impeach AV's testimony that she and defendant arrived at the house together. Regardless of whether the video showed or did not show AV's and defendant's arriving at the house together, photographic evidence indisputably established that AV and defendant were together in the four-seasons room of the house, and video footage showed them leaving the home together. Furthermore, AV's mother testified that defendant and AV left the motel together in his car, and a deputy testified that defendant told him that he took AV to the house to conduct MMA training. Defendant notes that the footage does not show AV arriving at the house; however, as already indicated, indisputable photographic evidence established that she was there with defendant.
>
> Defendant next contends that the video footage could have been used to impeach AV's testimony that she and defendant spent five hours at the house and that there was a puppy in the home. Defendant claims that the footage revealed that AV was at the house no more than three hours and that it did not show a puppy. The video, however, was unnecessary to establish conflicting evidence concerning how long AV was at the house. AV testified at one point that she was at the house for about five hours, but then she later testified that she was there from about 3:30 p.m. until 7:00 p.m. With respect to the lack of video evidence of a puppy, there was testimony that there were no surveillance cameras in the bedroom, and AV's testimony indicated that the puppy was in the bedroom. That the dog was in the bedroom might plausibly explain why there were no images of the dog on the surveillance videotape.
>
> Lastly, defendant asserts that the video footage could have been used to buttress his contention that he was conducting MMA training because it shows him taking boxing gloves and pads out of the car on more than one occasion. There was, however, no dispute that defendant conducted MMA training. AV testified that defendant showed her wrestling moves, and photographs of her and defendant depicted AV wearing boxing gloves.
>
> Given the foregoing, we conclude that defendant has not overcome the strong presumption that counsel's decision not to use the surveillance video constituted sound trial strategy under the circumstances. That a strategy did not work does not necessarily amount to ineffective assistance of counsel. People v. Petri, 279 Mich. App. 407, 412-413 (2008).

Sanchez, 2023 WL 3559661, *5.

As with the previous allegations, the state court adjudication of this claim reasonably applied the Strickland standard. While the videos may have been used to impeach the victim's testimony on certain details—such as the victim's recollection of being at the house for five hours

instead of three hours—counsel did not think presenting these aspects of the videos would have benefitted the defense: "[F]or me to stand in closing argument and try to impeach her because after she poured her heart out to the jury about the events that somehow she's not credible because she estimated five hours versus three and a half? No sound trial attorney would make that argument in a CSC case, and if they would, it wouldn't have been in [the defendant's] best interests." (ECF No. 9-14, PageID.1533.) Counsel offered similar rationales for his decision not to use other parts of the videos. (Id. PageID.1526–1538.)

As before, given the doubly-deferential standard of review governing counsel's conduct and the state court's application of the Strickland standard, Sanchez fails to demonstrate entitlement to relief with respect to this claim.

B

Sanchez's final claim asserts that the trial court erred in admitting testimony under Michigan Rule of Evidence 404(b) from the prior-acts witness when the witness could not identify Sanchez in the courtroom as the man who sexually assaulted her but instead identified him from a photograph.

The Michigan Court of Appeals rejected the claim as follows:

> Defendant next asserts that the trial court erred by not striking the testimony of a witness who provided evidence under MRE 404(b). Defendant argues that the testimony was inadmissible because the witness could not identify defendant in the courtroom. We disagree.
>
> This Court reviews for an abuse of discretion a trial court's decision to admit evidence. People v. Burns, 494 Mich. 104, 110 (2013). In regard to evidentiary issues, this Court reviews de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility. People v. McDaniel, 469 Mich. 409, 412 (2003). "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." Burns, 494 Mich. at 110 (quotation marks and citation omitted).

> The witness at issue testified that she met a "Christopher Sanchez" about 2½ years before the trial when he came to her sister's house to train the witness in MMA techniques. She claimed that during the training Sanchez pinned her to the floor and rubbed and touched her inappropriately on her chest, legs, and arms. The witness stated that she could feel his penis moving up and down in her "private area." The witness was unable to identify defendant in the courtroom, but she identified him in a photograph that had been admitted into evidence and that had been taken closer in time relative to the sexual assault.
>
> Defendant moved to strike the witness's testimony on the basis of her inability to identify defendant in the courtroom. The trial court denied the motion. The court reasoned that the witness's contact with the person whom she knew as Christopher Sanchez had been minimal and more than two years before the trial. The trial court further reasoned that the witness's statement that the Christopher Sanchez she knew held himself out to be an MMA trainer constituted a "secondary" means of identification. Finally, the court noted that defendant's hairstyle looked very different at trial in comparison to the 2019 photograph that the witness had used to identify defendant. Under the circumstances presented, and in light of the trial court's sound reasoning, we conclude that the trial court did not abuse its discretion or otherwise err by declining to exclude the witness's MRE 404(b) testimony.

Sanchez, 2023 WL 3559661, at *6.

Sanchez did not argue in the state courts that admission of the prior-acts testimony violated his federal constitutional rights. (ECF No. 9-18, PageID.2504–2407.) Nor does Sanchez assert a federal constitutional claim in his habeas petition. (ECF No. 1, PageID.9, 13.) His only argument in both state court and in this court is that the trial court erred under Rule 404(b). The state court's decision that the trial court did not err under state evidentiary rules, however, is not reviewable here. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"). Nor may habeas relief be based on an alleged violation of state law. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67–68 (1992). The claim is therefore not cognizable and cannot form the basis for granting federal habeas relief.

## IV. CERTIFICATE OF APPEALABILITY

Before Sanchez may appeal this decision, the Court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Sanchez must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of any of Sanchez's claims. The Court will therefore deny a certificate of appealability.

The Court also finds that because any appeal of this order would be frivolous, permission to appeal in forma pauperis will likewise be denied. FED. R. APP. P. 24(a).

## V. CONCLUSION

Accordingly, the Court i) denies with prejudice the amended petition for a writ of habeas corpus, ii) denies a certificate of appealability, and iii) denies permission to appeal in forma pauperis.

**SO ORDERED.**

Dated: August 13, 2026
Detroit, Michigan

s/Mark A. Goldsmith
MARK A. GOLDSMITH
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 13, 2026.

s/Joseph Heacox
JOSEPH HEACOX
Case Manager